**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **STEPHEN T. SAMMARTANO** | : | |
| **Plaintiff** | : | |
| | : | CA 06 535 S |
| **Vs.** | : | |
| | : | |
| **RAYTHEON** | : | |
| **Defendant** | : | |

## COMPLAINT

### I. Introduction

This is an action brought by the Plaintiff, Stephen T. Sammartano, seeking declaratory and injunctive relief, litigation expenses and other equitable relief, including back pay, as well as compensatory and punitive damages to redress unlawfull discrimination in employment the Plaintiff suffered on account of his perceived stutter disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. sections 12101 et seq. ("ADA").

### II. Parties

1. The Plaintiff resides in the City Of Pawtucket, State of Rhode Island. During the time of his employment he resided in Fall River, Massachusetts. He was formerly employed by Raytheon Inc.

2. Defendant Raytheon is a corporation with a local office located at 1847 West Main Road, Portsmouth, Rhode Island.

### III. Jurisdiction

3. This Court has jurisdiction pursuant to 28 U.S.C. sections 1331, 1367, 2201, and 2202.

### IV. Venue

4. Venue is proper in this Court insofar as Defendant is doing business and therefore deemed to reside in the District of Rhode Island, in compliance with requirements set forth in 28 U.S.C. sections 1391.

### V. Exhaustion of Administrative Remedies

5. On August 8th, the Plaintiff co-filed a charge alleging disability discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Rhode Island Commission For Human Rights ("RICHR").

6. On September 11, 2006, the EEOC issued a Notice of Right to Sue to the Plaintiff.

7. The Rhode Island Commission For Human Rights claims to never have received the submission.

8. There is no requirement under the RICRA relative to the exhaustion of administrative remedies.

## VI Material Facts

9. On or about November 10, 2003, the Plaintiff was hired by Defendant, Raytheon, as a Software Engineer.

10. During all relevant time periods, the Plaintiff's work performance was satisfactory. (See midyear review for 2005 issued August 24th of 2005 - Exhibit 1)

11. On January 13th of 2006, the Defendant placed the Plaintiff on a Performance Improvement Plan ( PIP Exhibit 2).

12. The Performance Improvement Plan was six parts - Ability To Prioritize And Complete Tasks, Communications, Ability To Follow Employer Common Processes, Teamwork, Knowledge Of The Bigger Employer Picture, Ownership/Accountability Of Issues.

13. The Plaintiff was eager to remain employed. Plaintiff has to pay rent. Plaintiff is aware that he has a speech problem and has had one since the first or second grade and is aware of the difficulty associated with finding a new job in connection with details created by having a speech problem. Plaintiff was eager to continue getting awards for his software and so produced an unrequested timely sixteen page response to the Performance Improvement Plan and delivered said to the Defendant on 9:34 am the following Monday, January 16. The sixteen page response mentioned the Plaintiff's speech problem in addition to addressing every part of the Performance Improvement Plan. ( see 16 pages of responses as Exhibit 3 actually 9 pages )

14. **Pretext.** Ability To Prioritize And Complete Tasks - The Plaintiff has an extensive list of tasks which he completed and prioritized up until and including the date of his termination. ( see submission to eeoc, Exhibit 4 ). The Performance Improvement Plan does not say what tasks the Plaintiff failed to prioritize or complete. For the statements made - no examples are provided only allegations are made. No further information in this regard was offered by the Defendant at any time. The Plaintiff expressed feedback relative to this issue in the sixteen pages of responses and in the eeoc submission.

15. **Pretext.** Communications - The allegations made under Communications are not substantiated with examples. The Plaintiff noted that the Defendant's complaints regarding Communications were very similar to comments made about Plaintiff from Plaintiff's past when his speech problem was much worse. Plaintiff noted the similarity to Defendant and noted the presence of his speech problem. The Plaintiff noted his speech problem to Defendant as early 10/13/2005. ( Exhibit 5 ) The Plaintiff expressed feedback relative to this issue in the sixteen pages of responses ( Exhibit 3 p9 item 2.0 ) and in the eeoc submission.

16. **Pretext.** Ability To Follow Employer Common Processes – An allegation made contrary to historical fact. Plaintiff expressed lack of such information being provided (Exhibit 6, page 6 asterisk ). The Plaintiff expressed feedback relative to this issue in the sixteen pages of responses and in the eeoc submission.

17. **Pretext.** Teamwork. The allegations made under Teamwork lack any connection to historical fact ( i.e. no example provided ). The allegations are made in stark contrast to historical fact. Plaintiff on his own initiative noted to Defendant through Department Head of his situation lacking of a team ( Exhibits 7, 8, 9 ) in response to skip level meeting. For an extended time, Defendant was alone in the sense of having deliverables everywhere. (The Plaintiff expressed feedback relative to this issue in the eeoc submission).

18. **Pretext.** Knowledge of Bigger Employer Picture – The Plaintiff knew enough of the bigger employer picture to produce a deliverable pre-spec which was used for the following year to validate the spec and eliminate errors before coding began. The Plaintiff was the recipient of numerous awards – two for his software, one from security suggesting an understanding of said bigger picture. The Plaintiff was ahead of schedule by definition numerous times suggesting having had prepared with knowledge of the bigger employer picture. The Plaintiff has degrees, coursework, certificates relevant to the employer's big picture.

19. **Pretext.** Ownership/Accountability of Issues – Plaintiff recognizes Defendant is looking for a problem specifically in connection with the Plaintiff.

20. **Pretext.** Expectations To Be Met – The Plaintiff's prioritized and completed tasks up until his termination were above and beyond the tasks stipulated. The tasks stipulated were to remove code that was not there. Plainttiff notified Defendant of such ( see Exhibit 3 p 1 ) and asked for explanation. No explanation was offered.

21. Defendant ignored the effort of the sixteen page response to the extent of seemingly not being aware of any of it and claiming not to have read it.

22. The Plaintiff was granted a new section manager per request.

23. The Performance Improvement Plan included weekly meetings.

24. The Plaintiff was eager to remain employed and continue getting awards for his software and so allowed the Defendant to raise whatever issue was of interest.

25. During the first weekly meeting Defendant sought from the Plaintiff evidence of due diligence to which the Plaintiff reminded the Defendant of the timely sixteen page response. The Defendant dismissed the effort as refusing to move forward.

26. Defendant continued to state numerous allegations. The Plaintiff would focus on each issue and explain how it was one sided and or lacked support. The Plaintiff was eagerly listening for supporting substance, something tangible, something beyond just an allegation. The Plaintiff did not hear anything beyond an allegation or a relation which was one-sided. The Plaintiff would explain such to the Defendant and ask for relevant information/elaboration and the Defendant would change the subject.

27. Defendant claimed emails of the Plaintiff were rambling and non-understandable. The Plaintiff finally heard something of substance.

28. The Plaintiff reminded the Defendant of Defendant's stated interest in moving forward and that as a new Section Manager representative of the Defendant that only a handful of emails had been submitted to him. ( Exhibits 10,11 ). The Defendant reasserted that Plaintiff's emails were rambling and non-understandable. The Plaintiff suggested that the few emails be printed out and in such manner analysis could be conducted to the extent of identifying how said emails were flawed. Defendant emphatically refused. Defendant claimed to be speaking of emails of the past in contradiction of his previously stated interest in moving forwards.

29. The Plaintiff forwarded all nine emails to Human Resources and a superior requesting explanation. ( Exhibits 10,11 ). A week later zero had been provided.

30. The Plaintiff was beginning to believe that the meetings themselves were to intentionally place him in a position of difficulty in light of his difficulty talking.

31. The Plaintiff was so traumatized by the callousness of the allegations which were in stark contrast to reality that he had to leave one the meetings for fear of cardiac arrest.

32. The Plaintiff's last day of work coincided closely with the killing spree in New Bedford. In light of the killing spree and of the Plaintiff's recognition of Defendant's callousness to the Plaintiff's interest, the Plaintiff became alarmed having no reason to believe that the Defendant was not capable of the worst or would not get ideas from the killing spree for reasons unknown to the Plaintiff. The Plaintiff refused to attend the meeting that day notifying Defendant of

Plaintiff's conscern. The Plaintiff offered to entertain constructive ideas through emailed lists.

33. Defendant placed the Plaintiff on Administrative Leave.

34. Two weeks later, Defendant requested Plaintiff to see a psychiatrist in the interest of * maybe * returning to work.

35. Plaintiff consented under duress and considered the pretexts above and the extent to which they were left without elaboration in the meetings.

36. The Plaintiff decided that he had done nothing wrong and was not about to see a psychiatrist.

37. The Plaintiff refused to go to see a psychiatrist..

38. Defendant later terminated the Plaintiff.

### *Failure to Provide Reasonable Accomodation*

39. **Request for Accomodation.** On numerous occasions the Plaintiff identified to the Defendant why he was sending email, that being because he stuttered. In so doing he was implicitly asking for acceptance of the means of communication.

40. **Refusal of Accomodation.** Insofar as the requested accommodation would have permitted the Plaintiff to perform his regular job while costing the Defendant nothing, it was by definition "reasonable". Nevertheless, Defendant made issue of the practice without cause.

### *Failure to Determine Reasonable Accomodation*

41. **Failure to Engage in Dialogue.** Plaintiff made Defendant well aware of Plaintiff's speech problem and why he was sending email. Defendant had a duty under applicable law to inquire and engage in a dialogue relative to the necessity and nature of any reasonable accommodation that the Plaintiff may require, which Defendant failed to do. The Plaintiff worked for Defendant for over two years which is over 730 days. Plaintiff had to send a weekly activity report every seven days. If Plaintiff sent one email every five days that would be 146 emails. It should be no surprise that Plaintiff sent hundreds of emails. It is interesting that so many of Plaintiff's emails were saved. Interesting to the extent that Plaintiff asked for copies of them for the purpose of taking a look at what is alarming people and to correct the issue for the future. Plaintiff's request was refused. Plaintiff was never informed that a specific email was unnecessary. Plaintiff never received even one email which was of the form that this the nth time that Plaintiff had been told that there is no way that Plaintiff can continue sending email in the volume which Plaintiff was. There is one email which Plaintiff was shown which Plaintiff personally saw no problem with. Only one. It concerned

explaining the phrase it's going as being in an indeterminant state. 1 is a very small percentage of hundreds. Less than one percent. Less than one percent represents the exceptional case – extraneous data as opposed to proof of existence of a quality. 80 is a lot of hundred. Defendant never showed Plaintiff 80 emails which all had one characteristic. Defendant never showed Plaintiff 80 emails period. Now having said that - people are different. Even so Plaintiff requested that a percentage of rambling of Plaintiff's emails be established in order that a percentage variance from the norm could be established. Plaintiff received no response. Plaintiff suggested that as Plaintiff believed that Defendant was not out to get just Plaintiff that Plaintiff and Defendant sit down and compare a large percentage of Plaintiff's emails with a high percentage of other emails to see how they were different. Plaintiff's request was declined. ( See Exhibit 4 submission to eeoc, Exhibit 3 - 16 page responses sec5.6, 5.7, 5.8, Exhibit 11 )

42. **Failure to Determine Accomodation.** Defendant made no effort whatsoever to determine whether the Plaintiff's request was appropriate and feasible or to consider the options available with respect to an accommodation, and instead allowed the creation of a potentially hostile environment and then attempted to capitalize on such.

**Unlawful Termination**

43. **Direct Evidence of Discrimination.** There is direct evidence that the Plaintiff was terminated on account of his disability in the sense that the Plaintiff sent an email noting the Defendant's actions. He put it in writing.

44. **Termination Motivated by Discrimination**. Even if the Plaintiff was not technically "disabled" within the meaning of the ADA, Defendant viewed the Plaintiff as "damaged goods" insofar as he was an employee who needed an accommodation which Defendant regarded as an inconvenience and annoyance and Defendant therefore allowed for at least the perception of a hostile environment to take advantage of as a pretext to terminate Plaintiff rather than accommodating Plaintiff in regards to his perceived disability.

***Retaliation.***

45. **Retaliatory Conduct.** Notwithstanding whether or not the Plaintiff was disabled and therefore entitled to a reasonable accommodation, he was terminated, in whole or in part, because he exercised his right to request a reasonable accommodation.

46. **Temporal Proximity.** The Plaintiff requested a reasonable accommodation on numerous occasions including contacting superiors in connection with what was wrong with his emails and was terminated without hearing from them. The temporal proximity of the foregoing to the Plaintiff's termination supports a

compelling inference the Plaintiff was terminated for exercising his right to request a reasonable accommodation under applicable law.

47. The Defendant's actions and/or omissions are in violation of the ADA and were intentional, willful, malicious, and/or with reckless and callous indifference to the statutorily protected rights of the Plaintiff.

48. As a proximate result of the Defendant's acts and/or omissions, including, but not limited to, those described herein, the Plaintiff has suffered and will continue to suffere loss of income and employment benefits, other economic damages, severe mental and physical anguish, pain and suffering, loss of enjoyment of life and other great harm.

## VII. Claims For Relief

49. The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 48 of this Complaint in each of the counts below with the same force and effect as if set forth therein.

### Count One
### Unlawful Discrimination in Violation of 42 U.S.C section 12101, et seq.

50. The actions and/or omissions of the Defendant, including, but not limited to, those described herein, constitute unlawful discrimination against the Plaintiff in employment on account of his perceived disability or perceived disability in violations of the Americans with Disabilities Act of 1990, causing the Plaintiff to suffer damages as aforesaid, and thereby deprived the Plaintiff rights secured under the Americans with Disabilities Act of 1990.

### Count Two
### Unlawful Retaliation in Violation of 42 U.S.C section 12101, et seq.

51. The actions and/or omissions of the Defendant, including, but not limited to, those described herein, constitute retaliation against the Plaintiff in employment on account his disability or perceived disability in violations of the Americans with Disabilities Act of 1990, causing the Plaintiff to suffer damages as aforesaid, and thereby deprived the Plaintiff rights secured under the Americans with Disabilities Act of 1990.

### Count Three
### Unlawful Discrimination in Violation of R.I.G.L. section 28-5-1, et seq.

52. The actions and/or omissions of the Defendant, including, but not limited to, those described herein, constitute unlawful discrimination against the Plaintiff in employment on account of his disability or perceived disability in violation of the

Fair Employment Practices Act, causing the Plaintiff to suffer damages aforesaid, and thereby deprived the Plaintiff of rights secured under the Fair Employment Practices Act.

**Count Four**
**Unlawful Retaliation in Violation of R.I.G.L. section 28-5-1, et seq.**

53. The actions and/or omissions of the Defendant, including, but not limited to, those described herein, constitute retaliation in violation of the Fair Employment Practices Act, causing the Plaintiff to suffer damages aforesaid, and thereby deprived the Plaintiff of rights secured under the Fair Employment Practices Act.

**Count Five**
**Unlawful Discrimination in Violation R.I.G.L. of 42-112-1, et seq.**

54. The actions and/or omissions of the Defendant, including, but not limited to, those described herein, constitute unlawful employment discrimination against the Plaintiff on account of his disability or perceived disability insofar as said actions resulted in the termination of an employment contract and the loss of benefits, privileges, terms, and conditions of a contractual relationship existing between the Plaintiff and Defendant in violation of the Rhode Island Civil Rights Act of 1990, causing the Plaintiff to suffer damages as aforesaid, and thereby deprived the Plaintiff of rights secured under the Rhode Island Civil Rights Act of 1990.

**Count Six**
**Unlawful Discrimination in Violation of R.I.G.L. 42-112-1, et seq.**

55. The actions and/or omissions of the Defendant, including, but not limited to, those described herein, constitute retaliation in violation of the Rhode Island Civil Rights Act of 1990, causing the Plaintiff to suffer damages as aforesaid, and thereby deprived the Plaintiff of rights secured under the Rhode Island Civil Rights Act of 1990.

**Count Seven**
**Unlawful Discrimination in Violation of R.I.G.L 42-87-1, et seq.**

56. The actions and/or omissions of the Defendant, including, but not limited to, those described herein, constitute unlawful discrimination against the Plaintiff in

employment on account of his disability or perceived disability in violation of the Civil Rights of People with Disabilities, causing the Plaintiff to suffer damages as aforesaid, and thereby deprived the Plaintiff of rights secured under the Civil Rights of People with Disabilities.

## Count Eight
## Unlawful Discrimination in Violation of R.I.G.L section 42-87-1, et seq.

57. The actions and/or omissions of the Defendant, including, but not limited to, those described herein, constitute retaliation in violation of the Civil Rights of People with Disabilities, causing the Plaintiff to suffer damages as aforesaid, and thereby deprived the Plaintiff of rights secured under the Civil Rights of People with Disabilities.

## VIII Prayers For Relief

WHEREFORE, Plaintiff respectfully prays that this Court grant the following relief:

1. A declaratory judgement declaring that Defendant, in the manner described herein, unlawfully discriminated against the Plaintiff in violation of the Americans with Disabilities Act of 1990, 42 U.S.C section 12101, et seq., Rhode Island Fair Employment Practices Act, R.I.G.L. section28-5-1, et seq., the Rhode Island Civil Rights Act of 1990, R.I.G.L. section 42-112-1, et seq,. and the Civil Rights of People with Disabilities , R.I.G.L. section 42-87-1, et seq.

2. Award Plaintiff back pay, including incremental increases, pension rights and other benefits, plus prejudgement interest thereon.

3. Award Plaintiff compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, plus prejudgement interest thereon.

4. Award Plaintiff exemplary damages for Defendant's intentional, malicious, reckless and/or willful violation of the Americans with Disabilities Act of 1990, 42 U.S.C. section 12101, et seq., the Rhode Island Fair Employment Practices Act, R.I.G.L., et seq., the Rhode Island Civil Rights Act of 1990, R.I.G.L.section42-112-1, et seq., and the Civil Rights of People with Disabilities R.I.G.L. section 42-87-1, et seq.

5. Award the Plaintiff reasonable costs of litigation pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. section 12101, et seq., the Rhode Island Fair Employment Practices Act, R.I.G.L., et seq., the Rhode Island Civil Rights Act

of 1990, R.I.G.L.section42-112-1, et seq., and the Civil Rights of People with Disabilities R.I.G.L. section 42-87-1, et seq.

6. Such other and further relief as the Court deems just and proper.

**IX Prayers For Relief**

Plaintiff hereby demands a trial by jury on all counts so triable.

Dated: November 30,2006

Stephen Sammartano
75 Arthur Street #4
Pawtucket, RI 02860
401.335.3412
Pro Se