**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

RECEIVED
MAY 02 2007
Property of U.S. District Court
District of Rhode Island

| | | |
|---|---|---|
| **STEPHEN T. SAMMARTANO** | : | |
| **Plaintiff** | : | |
| | : | |
| **Vs.** | : | **C.A. No. 06-535S** |
| | : | |
| **RAYTHEON** | : | |
| **Defendant** | : | |

## PRETRIAL CONFERENCE NOTICE 1 PLAINTIFF RESPONSE

### I. Introduction

Plaintiff responds to Pretrial Conference Notice 1 in connection with action brought by the Plaintiff, Stephen T. Sammartano, seeking declaratory and injunctive relief, litigation expenses and other equitable relief, including back pay, as well as compensatory and punitive damages to redress unlawfull discrimination in employment the Plaintiff suffered on account of his perceived stutter disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. sections 12101 et seq. ("ADA") as follows.

### Elements To Be Proved

1. Plaintiff must prove he is a person who has a disability as defined by the ADA (AmericansWith Disabilities Act of 1990) according to this three pronged test:

A person who has:

a) A physical or mental impairment that substantially limits one or more major life activities (Plantiff satisfies a) as consequence of c) );or

b) A record of having had such an impairment ( Plaintiff satisfies b) ); or

c) Is regarded as having such an impairment (perceived). (Plaintiff can show c) )

2. Plaintiff must prove that Defendant was informed of his disability.

3. Plaintiff must prove that the real reason for his termination was in connection with said disability or perceived disability and/or with a refusal of Defendant to provide or allow reasonable accommodation in connection with his disability and/or perceived disability in spite of him performing the job satisfactorily or being able to. Plaintiff must prove he did the job and could continue doing the job satisfactorily barring any lack of performance due to unfilled reasonable accommodations in connection with his disability and/or perceived disability. Relevant discrepancies/incompleteness in Defendant's statements/documents/situations from historical fact and/or reality must be revealed to the court. Relevant statements/documents/situations which call out a lack in Plaintiff or Plaintiff's performance which is not also exhibited to an equal or greater extent in his peers must be revealed to the court.

4. Plaintiff must also show that Defendant claimed to perceive said disability worse than it was as a means of justifying discrimination.

## Citations

## I. STUTTERING MEETS THE ADA'S DEFINITIONS OF "DISABILITY."

Title I of the Americans with Disabilities Act of 1990 (42 U.S.C. sections 12101 et seq.) ("ADA"), which took effect July 26, 1992, prohibits private employers, state and local governments, employment agencies, and labor unions from discriminating against qualified individuals with disabilities in job application procedures, hiring, firing, advancement, compensation, job training, and other terms, conditions, and privileges of employment.

It should be understood that the ADA does not list specific conditions by name as "disabilities." Congress purposely avoided doing this in order to avoid limiting the scope of the Act. Therefore, there is no significance to the fact that stuttering is not specifically listed, because no other conditions are specifically listed either. (It should also be noted that the Act does **exclude** certain specific conditions, and stuttering is **not** among those excluded. See, e.g., sections 12208, 12210, 12211.)

Instead, the question of whether an individual's condition is a "disability" under the ADA depends on whether it comes within any one of three general categories. The Act provides that: "The term 'disability' means, with respect to an individual -

> "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> "(B) a record of such an impairment; or
>
> "(C) being regarded as having such an impairment." 42 U.S.C. sec. 12102(2).

The federal regulations promulgated by the Equal Employment Opportunity Commission ("EEOC") under the ADA define "physical or mental impairment" to include, among other things, "Any physiological disorder" or "condition" affecting "speech organs" (29 C.F.R. sec. 1630.2(h)(1)), or "any mental or psychological disorder" such as "organic brain syndrome, emotional or mental illness, and specific learning disabilities" (29 C.F.R. sec. 1630.2(h)(2)). The regulations' definition of "major life activities" includes, inter alia, "functions such as . . . speaking . . . and working" [29 C.F.R. sec. 1630.2(i)].

Stuttering is a speech disorder, typically beginning in early childhood and affecting approximately one percent of the population, that causes involuntary loss of coordination or control of the physical organs of speech, resulting in the physical blockage of speech. (For a review of scientific research showing the physiological nature of stuttering as a disorder of coordination, see Van Riper, C., *The Nature of Stuttering*, pp. 396-414 (Prentice-Hall, Englewood Cliffs, NJ, 2nd ed., 1982).)

Stuttering clearly fulfills the definition of a "physiological disorder" or "condition" that affects the "speech organs" and that limits an individual's ability to participate in the "major life activity" of "speaking" and, in some cases, "working".

In addition, even in those cases where a person's stuttering might not in itself "substantially limit" a major life activity under 42 U.S.C. sec. 12102(2)(A) of the ADA, that person might still have a "disability" under sec. 12102(2)(C) because he is "regarded as having such an impairment." As explained in the EEOC's Americans With Disability Act Employment Regulations, 29 C.F.R. section 1630.2(1):

> "The rationale for the 'regarded as' part of the definition of disability was articulated by the Supreme Court in the context of the Rehabilitation Act of 1973 in *School Board of Nassau County v. Arline*, 480 U.S. 273 (1987). The Court noted that, although an individual may have an impairment that does not in fact substantially limit a major life activity, the reaction of others may prove just as disabling. 'Such an impairment might not diminish a person's physical or mental capabilities, but could nevertheless substantially limit that person's ability to work as a result of the negative reactions of others to the impairment.' 480 U.S. at 283. The Court concluded that by including 'regarded as' in the Rehabilitation Act's definition, 'Congress acknowledged that society's accumulated myths and fears about disability and diseases are as handicapping as are the physical limitations that flow from actual impairment.' 480 U.S. at 284.
>
> "An individual rejected from a job because of the 'myths, fears and stereotypes' associated with disabilities would be covered under this part of the definition of disability, whether or not the employer's or other covered entity's perception were shared by others in the field and whether or not the

> individual's actual physical or mental condition would be considered a disability under the first or second part of this definition. As the legislative history notes, sociologists have identified common attitudinal barriers that frequently result in employers excluding individuals with disabilities. These include concerns regarding . . . acceptance by coworkers and customers."

The EEOC Regulations give the following as an example of discrimination against an individual "regarded as" disabled under part C:

> "For example, an individual may have a prominent facial scar or disfigurement, or may have a condition that periodically causes an involuntary jerk of the head but does not limit the individual's major life activities. If an employer discriminates against such an individual because of the negative reactions of customers, the employer would be regarding the individual as disabled and acting on the basis of that perceived disability. See Senate Report at 24; House Labor Report at 53; House Judiciary Report at 30-31."

Therefore, if an employer discriminates on the grounds that stuttering would make a "bad impression" or cause negative reactions among customers or coworkers, then the person's stuttering would come under the "regarded as" definition of disability in subpart C.

Furthermore, stuttering is a perfect example of a condition that is stigmatized by negative stereotypes. Research has confirmed that persons who stutter are subject to negative stereotypes, which have significantly harmed their employment and promotion opportunities. These stereotypes include the widely accepted impression that stutterers are nervous, shy, quiet, self-conscious, withdrawn, tense, anxious, fearful, reticent, and guarded. See, e.g., Hurst, M. I., & Cooper, E. B., Employer attitudes toward stuttering, *Journal of Fluency Disorders*, 8, 1-12 1983); White, P. A., & Collins, S. R. C., Stereotype by inference: A possible explanation for the "stutterer" stereotype, *Journal of Speech and Hearing Research,* 27, 567-

570 (1984); Woods, C. L., & Williams, D. E., Speech clinicians' conception of boys and men who stutter, *Journal of Speech and Hearing Disorders,* 36, 225-234 (1971); Woods, C. L., & Williams, D. E., Traits attributed to stuttering and normally fluent males, *Journal of Speech and Hearing Research,* 19, 267-278 (1976).

## II. STUTTERING HAS BEEN RECOGNIZED AS A HANDICAP ENTITLED TO PROTECTION UNDER STATE ANTI-DISCRIMINATION LAW.

The fact that stuttering may qualify as a disability (or "handicap") entitling an individual to protection under an anti-discrimination statute was recognized by an Ohio Court of Appeals in *City of Columbus v. Liebhart*, 86 Ohio App.3d 469, 621 N.E.2d 554 (1993).

In that case, the plaintiff had served for 10 years as a part-time auxiliary fire fighter with a township fire department, had extensive fire-fighting and leadership experience, and had been rated as "excellent" by his co-workers. He then applied for a full-time position with the City of Columbus Fire Department. Although he successfully passed all his training courses and written exam, he was rejected because he stuttered during his oral interview.

Both the trial court and appellate court held that the plaintiff's stuttering was a "handicap" as defined in the Ohio Civil Rights Act, R.C. 4112.01(A)(13), even though the statute did not mention "speech" per se. The definition stated, in relevant part:

> "'Handicap' means a medically diagnosable, abnormal condition which is expected to continue for a considerable length of time, whether correctable or uncorrectable by good medical practice, which can reasonably be expected to limit the person's functional ability . . . so that he can not perform his everyday routine living and working without significantly increased hardship and vulnerability to what are considered the everyday obstacles and hazards encountered by the nonhandicapped."

The appeals court stated:

> "In the present case, the trial court was correct in concluding that Liebhart's stuttering disorder constituted a handicap. Liebhart testified that he was diagnosed as having this disorder, which he had had since he was eight years of age. He testified that his stuttering made it twice as difficult to carry on a conversation and this significantly affected his life. Further, speech pathologist Cathy Chester testified that one could assume that such a severe speech impediment would significantly affect his life. One could expect that his speech disorder would create significant hardship and vulnerability in a variety of everyday settings. The city did not offer any affirmative evidence to the contrary. Hence, Liebhart was handicapped under R.C. 4112.01(a)(13)."

The appeals court then went on to discuss the question of whether or not the plaintiff was "qualified to safely and substantially perform the essential functions of the job in question," in view of the fact that "clear, concise, and timely communication in the context of fighting a fire is an essential function of the job".

The Ohio Civil Rights Commission's hearing examiner, who presided over the testimony, found that plaintiff's stuttering was less of a problem when he was performing his duties as a fire fighter with the township than it was in everyday conversation. The hearing examiner expressly found that his "stuttering did not interfere with the performance of his job duties." Nevertheless, the hearing examiner found plaintiff unqualified, simply because he failed his oral interview. However, Civil Rights Commission strongly disagreed, stating that the oral interview was an improper selection device because it was an "insurmountable barrier to a speech impaired individual's employment opportunities to becoming a firefighter."

The case then went to the trial court, which rejected the Commission's reasoning. The trial court held that the persons who interviewed the plaintiff were the ones to determine if his

communication problem constituted a significant hazard in the firefighting context. The Court of Appeals reversed the trial court, stating:

> "The only evidence [the City] presented was the fact that Liebhart could not speak in a job interview - a totally different situation from that presented in a blazing building. **The firefighters and assistant safety director simply assumed that Liebhart's stuttering is caused by nervousness and would get worse in a stressful fire situation.** . . . They made their assessments of his abilities on the basis of assumptions about his handicap which had no basis i**n fact. This type of discrimination is exactly what the handicap discrimination law was designed to eliminate**." (Emphasis added.)

## III. THE DETKO V. BLIMPIES CASE DID NOT EXCLUDE STUTTERING FROM THE ADA.

Contrary to an argument sometimes made, the U.S. District Court in *Detko v. Blimpies Restauran*t, 924 F.Supp. 555 (S.D.N.Y. 1996), did not hold that stuttering could not qualify as a disability under the Americans with Disabilities Act. The Court merely held that, in order to invoke protection under the ADA, the plaintiff cannot simply plead in his complaint that he "stutters." The Court said that the plaintiff must plead facts showing that his stuttering comes under one of the statutory definitions of a "disability" as set forth in the Act. However, Mr. Detko had failed to plead facts in his complaint that would bring his stuttering under one of the statutory definitions of "disability." The court stated:

> "A disability is defined as 'a physical or mental impairment that substantially limits one or more of the major life activities of such individual . . . or being regarded as having such an impairment." 42 U.S.C.

> sec. 12102(2)(A). "Although speaking is a major life activity, see 29 C.F.R. sec. 1630.2(i), **Detko has not alleged that his impediment substantially limits his speaking or that he is regarded as having such an impairment**. To the contrary, he merely alleges that he stutters, and has particular difficulty with the letter 'M.'" Id., at 557 (emphasis added).

Therefore, the Court dismissed Detko's complaint **without prejudice**. In other words, the Court allowed Mr. Detko the opportunity to rewrite his complaint to allege additional facts. It is not known whether he ever did so, because there are no further published opinions in that case.

## IV. PERSONS WHO STUTTER SUFFER EMPLOYMENT DISCRIMINATION BECAUSE OF THEIR DISABILITY.

Scientific studies have shown that 85 percent of employers agreed that stuttering decreases a person's employability and opportunities for promotion. Hurst, M.I. & Cooper, E.B., Employer attitudes toward stuttering, *Journal of Fluency Disorders*, 8, 1-12 (1983). Vocational rehabilitation counselors who were surveyed reported that stuttering was indeed vocationally handicapping. Hurst, M.I. & Cooper, E.B., Vocational rehabilitation counselors' attitudes toward stuttering, *Journal of Fluency Disorders*, 8, 13-27 (1983). Surveys of people who stutter have reported high rates of unemployment, discrimination in attaining employment, and denial of promotions because of stuttering. Opp, K.L., Hayden, P.A., & Cottrell, G.T., Stuttering and employment: A survey report, *Annual Convention of the American Speech, Language, and Hearing Association*, Boston, MA (1997).

The studies cited above are only a tiny sampling of the extensive scientific research demonstrating the serious effect that stuttering has on major life activities and employment. The millions of Americans who are afflicted with stuttering need and deserve the protection of anti-discrimination statutes such as the ADA. They are entitled to their day in court and to a full hearing on the merits.

Dated: April 29, 2007

Stephen Sammartano 4/29/2007

Stephen Sammartano
75 Arthur Street #4
Pawtucket, RI 02860
401.335.3412
Pro Se