**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **STEPHEN T. SAMMARTANO** | : | |
| **Plaintiff** | : | |
| | : | |
| **Vs.** | : | **C.A. No. 06-535S** |
| | : | |
| **RAYTHEON** | : | |
| **Defendant** | : | |

**Motion For 06-535S Additional Exhibit Support 2**

## I. Introduction

Plaintiff submits Motion For 06535S Additional Exhibit Support in connection with action brought by the Plaintiff, Stephen T. Sammartano, seeking declaratory and injunctive relief, litigation expenses and other equitable relief, including back pay, as well as compensatory and punitive damages to redress unlawful discrimination in employment the Plaintiff suffered on account of his perceived stutter disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. sections 12101 et seq. ("ADA") as follows.

## Additional Exhibits Enclosed

1. Plaintiff submits additional exhibit support 2.

Dated: July 27, 2007

Stephen Sammartano 7/27/2007

Stephen Sammartano
75 Arthur Street #4
Pawtucket, RI 02860
401.335.3412
Pro Se

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **STEPHEN T. SAMMARTANO** | : | |
| **Plaintiff** | : | |
| | : | |
| **Vs.** | : | **C.A. No. 06-535S** |
| | : | |
| **RAYTHEON** | : | |
| **Defendant** | : | |

## Additional Exhibit Support 2

## I. Introduction

Plaintiff provides additional exhibits in connection with action brought by the Plaintiff, Stephen T. Sammartano, seeking declaratory and injunctive relief, litigation expenses and other equitable relief, including back pay, as well as compensatory and punitive damages to redress unlawful discrimination in employment the Plaintiff suffered on account of his perceived stutter disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. sections 12101 et seq. ("ADA") as follows.

## Exhibits Enclosed

1. Plaintiff's response to Defendant's first set of interrogatories.
2. Plaintiff's response to Defendant's requests for documents.

Dated: July 27, 2007

[signature] 7/27/2007

Stephen Sammartano
75 Arthur Street #4
Pawtucket, RI 02860
401.335.3412
Pro Se

Exhibit 23-1



**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **STEPHEN T. SAMMARTANO** | : | |
| **Plaintiff** | : | |
| | : | |
| **Vs.** | : | **C.A. No. 06-535S** |
| | : | |
| **RAYTHEON** | : | |
| **Defendant** | : | |

# DEFENDANT RAYTHEON'S FIRST SET OF INTERROGATORIES PLAINTIFF RESPONSE

## I. Introduction

Plaintiff responds to Defendant Raytheon's first set of interrogatories in connection with action brought by the Plaintiff, Stephen T. Sammartano, seeking declaratory and injunctive relief, litigation expenses and other equitable relief, including back pay, as well as compensatory and punitive damages to redress unlawfull discrimination in employment the Plaintiff suffered on account of his perceived stutter disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. sections 12101 et seq. ("ADA") as follows.

## Responses

1. I am working on assembling a list beyond those already mentioned in the documentation already provided.

2. as necessary/don't know at this time

3. none at this time

4. none at this time

submitted to defendant

Exhibit 43-2


5. Objection on the grounds that any inference made based upon such information will be speculation and is not related to liability of the alleged discrimination on the basis of a disability.

6. Plaintiff acquired a temporary job beginning February 12, 2006. The job title is software engineer 3. The rate of pay is $55/hour. There are no benefits. I object to providing further information at this time for fear of the Defense adversely affecting me by contacting my current employer to obtain information which can only be speculative and is not related to liability of the alleged discrimination on the basis of a disability.

7. Plaintiff acquired a temporary job beginning February 12, 2006. The job title is software engineer 3. The rate of pay is $55/hour. There are no benefits. I object to providing further information at this time for fear of the Defense adversely affecting me by contacting my current employer to obtain information which can only be speculative. Any additional information will have no value other than to make inferences which will be speculative and are not in connection with assessing any liability due to alleged discrimination committed by Raytheon.

8. I went to career fairs, I applied to jobs from the Providence Journal and the Boston Globe. I collected unemployment until about September 9th. I reviewed material which would be helpful in me obtaining future employment.

9. I have the information, but I object until it can be explained to me how this information will be used and or verified without slandering me.

10.a. State of Rhode Island Deparment Of Labor and Training on or about 02/17/06.

b.Hearing Date May 1, 2006 – discharged with no misconduct

c. $477.00/week for 26 weeks ending September 9th.

I did collect unemployment until September 9th through the Rhode Island Department of Labor and Training.

11. Yes. I am working on providing further information.

12. I stutter. I have difficulty speaking. The difficulty varies with time. Although there are certain words or letters I almost always have trouble saying, at times I can say those correctly without a thought. On some occasions I have trouble saying words correctly which I generally never have trouble saying. People develop speaking language vocabulary highly influenced by factors- environment, location ( often determines what language ), etc, various filters if you will. For someone who stutters an additional filter is words that he knows he will stutter on – he avoids them. While it often seems that I don't stutter, when I am working I will if I don't revert to email because I will be required to use words which I could otherwise avoid entirely or avoid by substitution of a similar word.

13. I had speech therapy forced on me through the public school system and later my parents paid for me to have speech therapy. I never found the speech therapy helpful aside to provide evidence that I have the problem. For some reason unknown to me at the time, my parents eventually stopped sending me to therapy. I cannot recall now if they decided it was not helping or if I decided it was not helping or if it we just all decided that it was not worth the investment. I never resumed therapy because I never had enough money to resume it and because I never found it helpful.

14. I generally don't mention that I have a speech problem until it becomes an impediment with someone in a conversation. I first exhibited a fluency problem with

Exhibit 23 - 4



Dennis Sagamang in January of 2004, but I didn't explain. The first written notification which I am aware of was 10/13/2005, Exhibit 5.

15. I mentioned to a number of people including co-workers and managers during my time at Raytheon that I found it easier to send email than to have a conversation because of my speech problem. In so doing I was implicitly requesting the alternate form of communication because of my speech problem. In fact, although it may come as a surprise I sometimes mentioned that I stutter in emails. I was not bragging or just sharing a bit of trivia, but I was asking for understanding, reasonable accommodation. There was no apparent problem with me using email until the performance improvement plan was issued and in my response to the plan, i.e. Exhibit 3, I put my position and needs in writing. I never attempted to flaunt the fact that I stutter. I wasn't looking for sympathy nor did I think being tagged as disabled was desirable. The reasonable accommodation i.e. email was already available and I used it. Noone had to ask to use email. When issues concerning email arose, I investigated the issues and was not provided any explanation. Given that the reasonable accommodation was already available, my requests for reasonable accommodation therefore amounted to requests to understand the reasons for relative restrictions upon me regarding it's use. My efforts to produce information related to why reasonable accommodation was being restricted for me included.

- Exhibit 11, dated 1/30/2006
- Exhibit 3, section 1.3, section 5.2, section 5.5, section 5.6, section 5.7, section 5.8 dated 1/16/2006
- Exhibit 3, p9 sections 2,4 dated 1/16/2006

Exhibit 23 5



- Exhibit 5
- Exhibit 10

16. Generally there was no response – just acceptance without contest. The form of the request was often explanatory i.e. it followed an episode of stuttering. This happened with my managers and co-workers. Sandra Vanier, Christine Lowrie. When the performace improvement plan came out, management seemed to be ignoring all of my responses including those connected with my speech problem, but while issues came and went, communications and email kept arising all in disregard of my attempts to explain and request reasonable accommodation more explicitly. Management was leading, talking and not at all listening. They attempted to ignore and be aggrevated by everything I said, did, and wrote. They ignored me stuttering. They ignored me having a problem speaking even after being informed of exactly what the problem was and the connection to email. They would attempt to not let me speak at all and to consume all of the time in the meetings with blue-sky issues, issues which were void of any constructive detail. It was impossible to get them to engage in dialogue as all events of communication were more of a podium from which they would insist upon input until they realized I had some at which time they would allow no input and change to a new subject. All meetings were a controlled intentional consumption of time. Things which were not available were of extreme importance, those which were available didn't matter. However, email, in one form or another always came back as the center of attention. I constantly attempted to pacify them and focus upon what they wanted to focus on as I was really attempting to be non-confrontational. They would say be concise. I would be concise and they would act as though they did not understand. I thought things would

start to go somewhere in agreement with the performance improvement plan, but they never did nor did the Defendant ever acknowledge what I was saying regardless of how I said it. They would never investigate the details of anything. At most they would make a note of a claim I made and that would be the end of addressing it. They would bring up something else. The only connection to reality was to the fact that I stutter.

17. allegation – Steve needs to improve is communications skills with peers, leads, and other stakeholders.

allegation – Steve needs to learn how to use e-mail and voice mail more selectively and avoid along ambiguous, repetitive messages.

allegation – Steve is not letting things go

allegation – Steve dwells on issues and allows it to affect his performance

allegation – Steve would occasionally have comments ( voice mail and e-mail ) that seemed to come completely from left field and left you wondering what he was talking about.

allegation – "Tends to dwell on problems too long"

allegation – "Seems to ramble and overanalyze at times

allegation – needs to learn to relax a little and don't overreact to situation

allegation – poor communication skills as referenced by Exhibit 5

18.1 a. Rob Froncillo

b. Heather Lemmon

c. Refusing to move forward.

d. Rob Froncillo's office

e. At one of the weekly performance improvement plan meetings

18.2 a Rob Froncillo

b. Heather Lemmon

c. characterized me as writing rambling and non-understandable emails

d. Rob Froncillo's office

e. At one of the weekly performance improvement plan meetings

18.3 a Rob Froncillo

b. Heather Lemmon

c. accused me of always going over people's heads and I don't/didn't

d. Rob Froncillo's office

e. At one of the weekly performance improvement plan meetings

18.4 a. Rob Froncillo

b. Heather Lemmon

c. alleged that I was associated with lack of teamwork

d. Rob Froncillo's office

e. At one of the weekly performance improvement plan meetings.

18.5 a. Rob Froncillo

b. Heather Lemmon

c. alleged that I am not a communicator

d. Rob Froncillo's office

e. At one of the weekly performance improvement plan meetings

18.6 a. Rob Froncillo

b. Heather Lemmon

c. not focusing on the performance improvement plan

Exhibit 23 - 8



d. Rob Froncillo

e. At one of the weekly performance improvement plan meetings

19. Plaintiff had noted to Defendant that he stutters. Stuttering is a difficulty talking. Plaintiff also noted this fact to the Defendant. Meetings involve a lot of talking. So after Plaintiff informed Defendant that Plaintiff had difficulty talking, Defendant created a situation which revolved about talking. The meetings seemed to have been created to intentionally place the Plaintiff in a position of difficulty and to allow the Defendant to take advantage of the Plaintiff in connection with his disability. While the meetings were supposed to be in connection with a performance improvement plan, the detail of the plan seemed to be beside the point.

20. I didn't make a list. I mentioned I had a speech problem when it exhibited itself in some way which created an unmet expectation in the listener. The idea that I was mentioning that I stuttered out of left field or that I was just sharing a piece of personal trivia is not true. I was mentioning the problem as information which could explain the listener's unmet expectations some of which I could envision and some of which perhaps I could not. I mentioned the problem at various times in emails. It's a way of asking for accommodation and if you disagree with this explanation then ask yourself why anyone would mention such a detail.

21. I didn't make a list. I mentioned it as appropriate.

22. I can't say that any of the Defendant's people actually threatened violence against me. I can say there was a gentleman who used to joke around with Bill Primiano when Bill sat close to Mike Solgar who was always saying "Oh, you're killing me, you're killing me". I can't remember his name, but I am sure Bill Primiano would remember his name.

The Defendant would do things which were unusual. Beginning from the skip level meeting when the Department Head explained what was considered normal for all and then failed to correct the abnormalities which I was experiencing. The meeting with human resources in November was certainly inexplainable as I was doing so well and the performance improvement plan which was void of any of the normal useful information typical of an instrument to induce correction was unusual. Details like this are all the types of things which would make anyone's concern rise. The Defendant had adopted a way of mocking or parroting my efforts to improve the situation. When I saw the performance improvement plan and noted the lack of useful of details I didn't understand it and I said so. I asked for a new section manager and was given one and I sent him an email saying that I would like to put my best foot forward. When we first spoke at the first performance improvement plan meeting he claimed my emails were non-understandable and that I was refusing to move forward in keeping with the parroting position. It became difficult to assess where the Defendant was going i.e. ultimately what was on the Defendant's agenda as their was no performance improvement plan. In addition, the performance improvement plan was in stark contrast to reality and it called out characteristics and applied them to me which were exhibited by everyone. The details explained herein will make one wonder where the people involved were going.

23. I had been placed upon administrative leave on Monday, February 6, 2006. On Monday, February, 20, Raytheon called me to convey the information described in Exhibit 19. The implication was that I would be unable to return to work if I didn't go to see a psychiatrist – refusing would result in me not being able to return to work. So on the spur of the moment I accepted under duress.

Exhibit 23 - 10



24. I explained that I was sending email because I stuttered as it was necessary. I explained it verbally. I made similar references in email.

25. I don't have a list.

Dated: July 24, 2007

Stephen Sammartano 7/24/2007

Stephen Sammartano
75 Arthur Street #4
Pawtucket, RI 02860
401.335.3412
Pro Se

State of Rhode Island
County of Pawtucket

Jisela Jimenez
July 24, 2007
Jisela Jimenez
my commission expires
06/09/10

Exhibit 24



**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **STEPHEN T. SAMMARTANO** | : | |
| **Plaintiff** | : | |
| | : | |
| **Vs.** | : | **C.A. No. 06-535S** |
| | : | |
| **RAYTHEON** | : | |
| **Defendant** | : | |

**DEFENDANT RAYTHEON'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS PLAINTIFF RESPONSE**

## I. Introduction

Plaintiff responds to Defendant Raytheon's first set of requests for production of documents in connection with action brought by the Plaintiff, Stephen T. Sammartano, seeking declaratory and injunctive relief, litigation expenses and other equitable relief, including back pay, as well as compensatory and punitive damages to redress unlawfull discrimination in employment the Plaintiff suffered on account of his perceived stutter disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. sections 12101 et seq. ("ADA") as follows.

**Responses In Association With Request Enclosed**

1. none at this time.
2. already done/no further documents at this time
3. enclosed
4. none
5. none
6. none
7. none yet

submitted to defendant

Exhibit 24 - 2

Sammartano VS Raytheon, Defendant Raytheon's First Set Of Requests For Production Of Documents Plaintiff Response, p2-3

8. none
9. none at this time
10. no further documents at this time
11. no further documents at this time
12. am filling out interrogatories now
13. already supplied
14. did not apply for disability benefits
15. While I can provide the information I object until it can be explained to me how this information will be used without slandering me
16. While I can provide the information I object until it can be explained to me how this information will be used without slandering me
17. included under 19
18. none
19. Objection on the grounds that any inference made based upon such information will be speculation and is not related to liability of the alleged discrimination on the basis of a disability.
20. none at this time
21. none at this time
22. none at this time
23. already supplied
24. no further documents at this time.
25. I am working on furnishing relative documents.
26. Six Sigma - already supplied

Exhibit 24 - 3



27. no further documents at this time

28. Already supplied exhibit 5

29. no further documents at this time

30. no further documents at this time

31. degrees enclosed

32. no further documents at this time

33. no further documents at this time

34. no further documents at this time

35. no further documents at this time.

36. no further documents at this time.

37. no further documents at this time.

38. Object. Objection on the grounds such information is not related to liability of the alleged discrimination on the basis of a disability.

Dated: July 24, 2007

_______________________________________

Stephen Sammartano
75 Arthur Street #4
Pawtucket, RI 02860
401.335.3412
Pro Se

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To: Agency(ies) Charge No(s):

☐ FEPA
☒ EEOC 523-2006-00994

**Rhode Island Commission For Human Rights** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Stephen Sammartano** | **(401) 335-3412** | |

Street Address: **75 Arthur Ave., Apt. #4, , RI**   City, State and ZIP Code:

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **RAYTHEON** | **Unknown** | **(401) 842-5438** |

Street Address: **1847 W. Main Rd., Portsmouth, RI 02871**   City, State and ZIP Code:

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

Street Address:   City, State and ZIP Code:

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☐ RETALIATION ☐ AGE ☒ DISABILITY ☐ OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **02-02-2006** Latest: **08-08-2006**
☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

1. I was not given raises, not given proper training, and ultimately I was terminated from my position as Software Engineer

2. Respondent's explanation for the actions taken against me were due to "communications problem".

3. I have a stutter condition, and I believe that Respondent perceived me as being disabled. In fact, even though the stutter is not very pronounced, Respondent deliberately tried to perceive it as more pronounced than it is.

4. I believe I have been discriminated against in violation of the Americans with Disabilities Act of 1990, as amended, and applicable state laws.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – When necessary for State and Local Agency Requirements

BENJAMIN N. NIDUS
Notary Public
Commonwealth of Massachusetts
My Commission Expires
December 15, 2011

I declare under penalty of perjury that the above is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

[signature]

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*

August 8, 2006 [signature]

**Aug 08, 2006** [signature]

Date — Charging Party Signature

Exhibit 24-5 / Request 3

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

To: Stephen Sammartano
75 Arthur Ave.
Apt. #4
Pawtucket, RI

From: Boston Area Office - 523
John F. Kennedy Fed Bldg
Government Ctr, Room 475
Boston, MA 02203

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
| --- | --- | --- |
| 523-2006-00994 | Robert L. Sanders, Director | (617) 565-3200 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Robert L. Sanders,
Area Office Director

SEP 11 2006
*(Date Mailed)*

Enclosures(s)

cc: RAYTHEON
1847 W. Main Rd.
Portsmouth, RI 02871

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS DLT484-C
DEPARTMENT OF LABOR AND TRAINING

Exhibit 24-6 / Request #13

Central Adjudication Unit, PO Box 20067, Cranston, RI 02920-0941
Tel: (401)462-8300 FAX: (401)462-8318 TDD: (401)462-8304
Internet address: www.dlt.state.ri.us/ui

CLAIMANT DECISION

Mailing Date: 03/30/06
Employer: RAYTHEON COMPANY
SSN: 0364
No: 0620662-00

STEPHEN T SAMMARTANO
75 ARTHUR ST
APT 4
PAWTUCKET RI 02860-3101

Your employer states you voluntarily left your job when you failed to comply with the provisions set to retain your employment.

The issue is whether or not you left your job with good cause under the provisions of Section 28-44-17 of the Rhode Island Employment Security Act.

Your leaving is considered to be without good cause since you did not take the steps necessary to protect your job. You are denied benefits as indicated below.

This disqualification covers the period indicated below according to Section 28-44-17: You are denied benefits beginning with the week ending 02/25/06. This disqualification will end when you have at least (8) weeks of employment after week ending 02/25/06 and in each of those eight weeks, you have earnings equal to or greater than $135.00.

Jennifer S. Kinch
Authorized Representative of the Director

RIGHT TO APPEAL

If you disagree with this determination, you must file a written appeal within 15 calendar days of the mailing date indicated on this decision or IT WILL BECOME FINAL. You may file an appeal either by mail, fax or via the Internet to the address/fax number/web site above. In your letter, please provide your social security number, current address, the case number you are appealing, and reason for appealing the decision. Once your appeal is received, you will receive further instructions by mail. Additional information regarding the appeal process is listed in your copy of "Your Benefits Rights".

DET-BR-3BS (Rev. 05/99)
EO-02

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

# Board of Review

For
The Department of Labor and Training
275 Westminster Street, Providence, RI 02903-3434
Telephone (401) 222-3533 Fax (401) 222-3514
WEBSITE: WWW.DLT.STATE.RI.US/BOR

Thomas J. Daniels
Chairman
Nathaniel J. Rendine
Edward A. Lombardo, Sr.

STEPHEN SAMMARTANO
75 ARTHUR STREET, #4
PAWTUCKET, RI 02860

MAILING DATE: May 2, 2006
SSN: 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
APPEAL NUMBER: 20061403 UC
DATE OF APPEAL: April 13, 2006
HEARING DATE: May 1, 2006
CAU NUMBER: 06-20662-1

## DECISION OF REFEREE

1. TRAVEL OF THE CASE:

The claimant had been employed for Raytheon a period of two years. His last actual day of work was February 6, 2006. The Director determined that the claimant voluntarily left the job without good cause, under the provisions of Section 28-44-17 of the Rhode Island Employment Security Act. The claimant filed a timely appeal. A hearing on the appeal was scheduled. A Notice of Hearing was sent to all interested parties. The hearing was held on May 1, 2006. The claimant appeared and testified represented by attorney. The claimant's father appeared as an observer. The employer, with notice, did not appear in support of their allegation.

2. FINDINGS OF FACT:

The claimant had worked for this employer a period of two years. His last day of work was February 6, 2006. On that date, the claimant was notified that he was being placed on administrative leave with pay. Subsequently on February 20, 2006, the claimant was notified that the employer scheduled a medical appointment with a psychiatrist. The claimant questioned the circumstance of being placed on the involuntary leave and did not keep the appointment with the psychiatrist. The claimant was thereafter terminated by the employer. He did not quit the job.

3. CONCLUSION:

While the Director determined that the claimant left work voluntarily without good cause within the meaning of Section 28-44-17 of the Rhode Island Employment Security Act, I find that he did not leave voluntarily. He was discharged.

To be determined, therefore, is whether or not he was discharged under disqualifying circumstances under the provisions of Section 28-44-18 of the Rhode Island Employment Security Act.

In order to impose a disqualification under the provisions of Section 28-44-18, there must be proof that the person who was discharged committed an act of misconduct in connection with the work.

Section 28-44-18 provides, in part, as follows:

Exhibit 24-8 / Request 13

For the purposes of this section, misconduct shall be defined as deliberate conduct in willful disregard of the employer's interest, or a knowing violation of a reasonable and uniformly enforced rule or policy of the employer, provided that such violation is not shown to be as a result of the employee's incompetence. Notwithstanding any other provisions of chapters 42 -- 44 of this title, this section shall be construed in a manner which is fair and reasonable to both the employer and the employed worker.

The evidence presented establishes the claimant did not quit the job but was in fact discharged. The burden of establishing that the claimant was discharged for reasons of misconduct rests solely upon the employer. There has been no evidence presented to indicate that the claimant's termination was for reasons of misconduct. In the absence of that evidence, I hold that the claimant's termination is under other than disqualifying conditions and benefits may not be denied on this issue.

4. DECISION:

The decision of the Director is reversed. The claimant did not leave work voluntarily. Therefore, he cannot be denied Employment Security benefits under the provisions of Section 28-44-17 of the Rhode Island Employment Security Act. He was discharged, but not for reasons of misconduct in connection with his work. He is, therefore, not subject to disqualification under the provisions of Section 28-44-18 of the Statute. He will be entitled to receive Employment Security benefits if he meets all other eligibility requirements.

***APPEAL RIGHTS***

***This decision will become final unless, within fifteen (15) calendar days of the mailing date hereof, you file an appeal in writing to the Board of Review for the Department of Labor & Training. The appeal can be delivered, mailed, faxed or e-mailed to the Board at 275 Westminster Street, Providence, RI, 02903-3434. Fax number: (401) 222-3514.***
***E-mail: BORINFO@DLT.STATE.RI.US WEBSITE: WWW.DLT.STATE.RI.US/BOR.***

- **Equal Opportunity Employer/Program**
- **Auxiliary aids and services are available upon request to individuals with disabilities.**
- **TDD: (401) 462-8006**

**DERECHOS DE APELAR**

**Esta decisión sera finalisada a menos que, dentro de quince (15) días del calendario de la fecha que se le envió la decisión, usted apele en escrito al Board of Review para el Departamento de Labor y Entrenamiento. Puede entregar la apelación por correo, telefax o e-enviar a el Board a la direction 275 Westminster Street, Providence, RI, 02903-3434. Numero de Fax: 401-222-3514. E-enviar: BORINFO@dlt.state.ri.us. WEBSITE: www.dlt.state.ri/us/bor**

BOARD OF REVIEW

BY Stanley Tkaczyk
STANLEY TKACZYK, REFEREE

cc: DIRECTOR
MATTHEW BRIER, ESQ.

HUMAN RESOURCES
RAYTHEON COMPANY
1847 WEST MAIN ROAD
PORTSMOUTH, RI 02871

Exhibit 24 of Request # 3

# University of Lowell

*The Board of Trustees in accordance with the recommendation of the President of the University and of the Chancellor and Faculty of the University of Lowell, hereby confers upon*

## Stephen T. Sammartano

*the Degree of*

## Bachelor of Science in Electrical Engineering

*in consideration of the satisfactory completion of the Course of Study prescribed for that Degree.*

*Given at Lowell*

**May 31, 1992**

William T. Hogan
CHANCELLOR, LOWELL CAMPUS

PRESIDENT OF THE UNIVERSITY

CHAIRPERSON, BOARD OF TRUSTEES

Exhibit 24 - 10
Request 31

# University of Lowell

The Board of Trustees, in accordance with recommendations
of the President and the Faculty
of the University of Lowell,
and by authority of the Board of Regents
of the Commonwealth of Massachusetts,
hereby confers upon

**Stephen T. Sammartano**

the Degree of

**Bachelor of Science**

in consideration of satisfactory completion of the
Course of Study prescribed for

**Mathematics**

Given at Lowell, Massachusetts

June 3, 1990

William T. Hogan, PRESIDENT — Richard R. Dowling, CHAIRPERSON — Franklyn G. Jenifer — Paul E. Tsongas